293 So.2d 395 (1974)
James E. YONGE, As Trustee, Petitioner,
v.
Reubin O'd. ASKEW, Governor of the State of Florida, et al., Respondents.
No. T-235.
District Court of Appeal of Florida, First District.
March 14, 1974.
Rehearing Denied May 17, 1974.
*397 William J. Roberts and David Linn, Tallahassee, for petitioner.
Kenneth G. Oertel, Tallahassee, for respondents.
WIGGINTON, JOHN, T., Associate Judge.
Petitioner seeks review by certiorari of a final order rendered by respondent-Trustees of the Internal Improvement Trust Fund of the State of Florida, a state administrative agency hereinafter referred to as Trustees.
The order sought to be reviewed denied petitioner's application for a permit to dredge three navigational connections into Crystal River in Citrus County, Florida, from petitioner's uplands consisting of a parcel of approximately 700 acres on which petitioner plans a real estate development. The dual assault on the order rendered by the Trustees first contends that petitioner's application met all requirements of law, by reason of which the Trustees were mandatorily required to issue the requested permit as a ministerial duty in which they were clothed with no judgment or discretion, or, in the alternative, if they are vested with discretion in the consideration of petitioner's application, that discretion was grossly abused in that it is unsupported by any competent or substantial evidence.
This review by certiorari is sought pursuant to the provisions of the Administrative Procedures Act, F.S. Chapter 120, F.S.A. Review of final administrative action under this provision of law is confined exclusively to final administrative orders rendered by a state officer, board, department, or commission in the performance of quasi-judicial functions and not to orders rendered in the performance of quasi-executive or quasi-legislative functions.[1] The statute under which the permit was sought in this case makes no provision for a quasi-judicial hearing to be held on such application as a prerequisite to its approval or rejection. The application was merely placed on the agenda of a regular meeting to be held by respondent-Trustees, to be considered along with other agenda items. Petitioner was notified of the date of the meeting and appeared by his counsel who made an unsworn oral presentation of the application and an explanation of the uncertified supporting documentary evidence relied on for approval. A transcript of the minutes of that meeting has been filed in the record before us, which consists of nothing more than questions and observations of several of the Trustees present at the meeting and an unsworn statement by respondents' executive director in opposition to the application. Such meeting falls far short of the quasi-judicial proceeding affording due process of law that is contemplated and required by the Administrative Procedures Act. Normally, quasi-executive action of the kind here sought to be reviewed may be challenged only by an appropriate action either in mandamus, prohibition, or for a declaratory judgment or mandatory injunction, brought in the Circuit Court of Leon County in which a full evidentiary hearing will be afforded and sworn proof adduced in support of and in opposition to the order complained about.[2] However, a record of sorts has been filed in this cause consisting not only of the minutes of the meeting at which petitioner's application was considered and denied, but also two certified transcripts consisting of copies of a portion of the file in the office of respondents pertaining to petitioner's application for permit. The parties are apparently willing for this court to consider the foregoing record as containing all of the material evidence on which respondents acted in denying petitioner's application, and are agreeable that it be considered as *398 sworn competent proof to the same extent as if it had been properly received in evidence at a quasi-judicial hearing held in accordance with the requirements of law. With the foregoing explanation and qualifications, we will proceed to consider and dispose of the petition on its merits.
The history and facts concerning the application involved in this matter are not in dispute. Petitioner is the owner of a substantial parcel of land in Citrus County bordering on Crystal River, a navigable body of water of the State of Florida. Petitioner has developed a plan which contemplates the creation of numerous waterfront lots in his uplands by excavating three irregularly-shaped canals in the flood plain of Crystal River and then connecting those canals with the river. The three navigational connections of the canals to the river itself will require the dredging of some 12,000 cubic yards of earth from the river bottom. Before dredging the navigational connections into Crystal River, it became necessary for petitioner to receive a permit from the Trustees granting him the authority to proceed with this phase of his development plan. In order to comply with the requirements of law, petitioner filed with the Trustees an application pursuant to the provisions of F.S. Sections 253.123(2)(a) and (3)(a), F.S.A., governing permits to dredge for navigational purposes, which are as follows:
"(2) The removal of sand, rock or earth from the navigable waters of the state as defined in section 253.12, Florida Statutes, and the submerged bottoms thereof by dredging, pumping, digging, or any other means shall not be permitted except in the following instances:
* * * * * *
"(a) For the construction, improvement or maintenance of navigation channels and drainage and water control facilities;
"(3)(a) Works authorized under paragraph (a) ... of subsection (2) shall only be undertaken after receipt of a permit from the board of trustees, which permit shall be granted after consideration of a biological or ecological study, unless waived by the affirmative vote of at least five of the seven members of the board of trustees, upon a showing of the public interest which will be served by such works."
Upon receipt of petitioner's application, the Trustees' staff requested ecological responses from several state agencies. Based upon such responses, petitioner amended its application in an effort to comply with the objections and recommendations of the agencies concerned. After modification of petitioner's application, the State Department of Pollution Control withdrew the objection it had previously made on the ground that the contemplated development would degrade the water quality of Crystal River. Likewise, the Game and Fresh Water Fish Commission, which was primarily concerned with preserving a tree in which was located an eagle's nest, withdrew its objection to the application when petitioner agreed to dedicate the area around the tree so as to preserve in perpetuity a nesting place for the eagles. The Board of County Commissioners of Citrus County adopted a resolution approving petitioner's application and finding that the planned development envisioned by the application would be in the public interest. A question was raised as to the problem of sewage disposal which would develop in the area to be improved by petitioner, so the City of Crystal River took official action annexing the property to be improved into the city limits and agreed to expand the city sewerage treatment plant to accommodate all future residences in the area.
The ecological responses received by the Trustees' staff from other state agencies were in opposition to the application and recommended that it be disapproved. The Department of Natural Resources filed a report stating its views to be that the canal system planned by petitioner would portend *399 the destruction, by dredging and filling, of significant areas of productive fresh water and tidal marsh lands and creek systems. It took the position that the development proposed by petitioner would have a permanent, immediate, and long-range adverse effect on the marine biological resources of Crystal River.
The Coastal Coordinating Council, concerned with environmental and ecological considerations, made a study of petitioner's application and filed its written objection to the granting of the application. It was the position of this agency that the proposed excavation areas for the canals include extensive portions of original marsh system vital to the marine productivity of Crystal River. It declared that the proposed excavation sites currently act as natural grassed swales to filter urban run-off from present development near Crystal River, the removal of which would down-grade water quality in the river. The agency expressed the view that urban run-off and turbidity which would result from the excavated canals planned by petitioner would have a decidedly negative effect on the productive marine grass beds in the area. It was of the opinion that the urbanization resulting from petitioner's real estate development would inevitably result in some degree of pollution, thereby threatening the largest known concentration of the endangered manatee or sea cow in Florida.
The professional staff of the Trustees likewise made an ecological study of the application and reported that the land development program planned by petitioner would result in greater pollution and turbidity to the unique spring-fed waters of Crystal River and would have a decidedly deleterious effect upon its purity and clarity. It was the staff's position that all further development of the kind contemplated by petitioner requiring navigational access to Crystal River should be discouraged if the ecological value of the river was to be maintained. Based upon its study, the staff recommended against granting the application sought by petitioner and asked that it be denied. It was upon the basis of the foregoing considerations that the Trustees rendered their order of denial which petitioner now seeks to have reviewed.
By his first point petitioner contends that under a proper construction of the above-quoted statute, the Trustees had no discretion but to issue the permit after receiving the ecological studies required by the statute and that they departed from the essential requirements of law in refusing to do so. Attention is invited to the terms of the statute which in essence provide that a permit for the removal of sand, rock, or earth from the navigable waters of the state and the submerged bottoms thereof by dredging for the construction of navigational channels "shall be granted after consideration of a biological or ecological study upon showing of the public interest which will be served by such works". Petitioner insists that after ecological studies have been made and reports thereof filed with the Trustees, the issuance of a dredging permit in accordance with an application made therefor becomes a ministerial duty in the performance of which the Trustees are vested with no judgment or discretion. Under this interpretation of the statute, it would matter not whether the ecological responses received by the Trustees established that the granting of the permit would be in harmony with or destructive of the ecology of the area. If such an interpretation is to be indulged, we would have to hold that the legislature's requirement of a biological or ecological study as a factor to be considered in granting a dredging permit would be a useless and meaningless gesture. With such an interpretation we are unable to agree. It seems clear to us that the legislature intended, by the adoption of this statute, to require that before any dredging permit is issued, the Trustees must first receive and consider biological or ecological studies of the application in order to determine what impact, if any, the approval of *400 the application would have on the ecology of the affected area. It would follow that the Trustees are vested not only with the right but a duty to examine the studies made in relation to the application and to exercise a sound discretion in determining whether the public interest will be served by the proposed works contemplated by the application. If, in the exercise of that discretion, the Trustees determine that the granting of the application would have an adverse effect upon the ecology of the area and would not be in the public interest, it is authorized to deny the application. This is not to say that the Trustees are privileged to act arbitrarily, capriciously, or in a manner contrary to the manifest weight of the evidence submitted in support of the application. Petitioner's position in this regard must therefore be rejected.
Lastly, petitioner asserts that even conceding that respondents are vested with discretion in the granting or denial of dredging permits applied for under F.S. Sections 253.123(2)(a) and (3)(a), F.S.A., in the case sub judice they grossly abused that discretion by reaching a conclusion contrary to the competent and substantial evidence before them. Petitioner points to those portions of the record which show that the only state ecological agencies vested with jurisdiction over water quality standards and pollution and over the preservation of game and fresh water fish resources of the state both withdrew any objections they had to the granting of the dredging permit applied for. Petitioner claims proof that the public interest would be served by the works contemplated by his application for permit is established by the resolution of the Board of County Commissioners of Citrus County. He insists that the objections to his application interposed by the Department of Natural Resources and the Coastal Coordinating Council consist exclusively of conclusions without any basis in fact and relate to areas of concern dealing with water quality, pollution, game and fresh water fish, over which neither agency has any jurisdiction or control. It is the position of petitioner that the staff of the Trustees based its opposition to the application only upon its general apprehension that further land development in the area of Crystal River would result in pollution and a degree of turbidity destructive of the ecology of the region and detrimental to the endangered species of manatee breeding therein. We are asked to take judicial notice of the fact that neither the Trustees nor the Coastal Coordinating Council has any jurisdiction over the development of lands in private ownership and has no legal right to oppose his application for a dredging permit on pure speculation as to conditions which might result if further development in that area is pursued.
While it is quite true that both the State Department of Pollution Control and the Game and Fresh Water Fish Commission withdrew the objections initially registered by them to petitioner's application, it does not necessarily mean that the Trustees were thereby precluded from considering the views expressed by other agencies concerned with ecological considerations. Respondents, as Trustees, are charged with the responsibility of preserving the navigable waters of this state not only for the benefit of upland owners but also for all of the people of Florida. Theirs is the duty of taking a broad and objective view of all matters under their jurisdiction which might adversely affect the public interest and of reaching their decisions in a manner consistent with the greatest good for the greatest number. It is apparent from the record before us that not only the Coastal Coordinating Council and the Department of Natural Resources but also the professional staff of the Trustees were all concerned with what they considered to be the adverse impact which the granting of petitioner's application would have on Crystal River and the marine life abounding in that body of water. It appeared to be their position that no dredging permits should be granted to petitioner or to anyone else seeking navigational channels into *401 the river because to do so would eventually result in destroying its beauty, ecology, and breeding grounds for marine life. The purpose of the development planned by petitioner is to create a large number of valuable waterfront lots on his uplands which would border the canals that are to be excavated for that purpose. While such plan would be highly beneficial from a development standpoint, there is no showing that such benefits would also redound to the public generally. Petitioner's land borders on Crystal River and has a considerable amount of riverfront access which could be utilized for development purposes without digging navigational channels into the river. While concededly this would not be nearly as desirable or profitable as the plan of development evolved by petitioner, it would be an alternative to such plan if development is to be effectuated. Reverting to the statute under consideration, it appears to cast on the applicant for a permit the burden of making an affirmative showing that the works for which the permit is sought will be in the public interest. Such requirement is not met by the bare assertion recited in the resolution adopted by the Board of County Commissioners of Citrus County that petitioner's development plan is in the public interest. While the development of petitioner's land may be in the public interest of Citrus County, there is no showing that it is in the interest of all the people of the State of Florida for whom respondents hold the bottoms of Crystal River in trust.
In the case of Hayes v. Bowman[3] the presumption of correctness which the policy of the law accords to acts of the Trustees of the Internal Improvement Fund was expressed in the following manner:
"It appears to us that our position is strengthened when we take note of the fact that the Trustees of the Internal Improvement Fund are five constitutional officers of the executive branch of the government. If we are ever to apply the rule that public officials will be presumed to do their duty, it would appear to us to be most appropriate in this instance. Certainly we are not to assume that in the supervision and disposition of submerged lands the Trustees will knowingly ignore the rights of upland owners. It is to be assumed that they will exercise their judgment in a fashion that will give due regard to private rights as well as public rights. This Board would appear to be the most appropriate repository of the responsibility to be exercised in these matters in the first instance. The exercise of their judgment should not be subjected to adverse judicial scrutiny absent a clear showing of abuse of discretion or a violation of law... ."
From the inadequate and insufficient record before us, we are unable to say that the Trustees' denial of petitioner's application was not based upon competent and substantial evidence of ecological responses received by them from their staff and the agencies mentioned above. We detect in the Trustees' action no indication of arbitrariness or capriciousness. Their decision appears to us to be a conscientious effort to serve what they conceive to be the public interest as distinguished from the private interest of petitioner.
It is apparent that the Trustees, who are elected by and responsible to all of the people of Florida, have given a higher priority to the necessity of maintaining Crystal River as a beautiful, clear, and unpolluted spring-fed body of water, in which marine life and the endangered manatee may continue to thrive as they have in the past, than to the necessity of developing the area bordering and adjacent to Crystal River as a high-class waterfront-type residential subdivision. Although one might *402 question the wisdom or fairness of such policy, we find no basis on which to question the legal right of the Trustees to reach such conclusion.
Petitioner having failed to demonstrate by the record evidence sufficient to overcome the presumption of correctness which clothes the action of respondents in the premises, certiorari is denied and the petition dismissed.
SPECTOR, Acting C.J., concurs specially.
CREWS, JOHN J., Associate Judge, concurs.
SPECTOR, Judge (concurs specially):
I agree with the conclusion reached by the majority herein that certiorari be denied.
However, I think it appropriate to state that I do not fully accept the majority's view that the order reviewed herein is supported by competent substantial evidence of the type ordinarily admissible in an adversary proceeding. Much of the evidence submitted to the state cabinet sitting as the respondent Board is in a form which was conclusory and subject to cross examination or objection on grounds of relevancy, materiality or competency. The majority opinion has taken note of the questionable character of the order reviewed herein. Is it quasi-judicial or quasi-executive in nature? No answer to this query has been supplied by the court, and, indeed, perhaps an answer is not in order since both sides of this controversy seem content to have the dispute adjudicated regardless of whether the order is quasi-judicial or quasi-executive. While the distinction seems of no moment to the parties, it does to me for in the one case we can be concerned by the relevancy, materiality or competency of the evidence and whether the parties were afforded an opportunity to subject the witnesses and their evidence to the crucible of cross-examination. If, however, the order is quasi-executive in character, the forum in which its legality is to be tested is the Circuit Court and there, in an original action, the parties may invoke the time honored devices of cross-examination of witnesses and appropriate objections to evidence on the grounds mentioned above.
While the parties seemingly have vested us with jurisdiction to review the order by not contesting  or some may say quibbling over  the nature of the order, I am inclined to suggest that applicants for permits and the like being sought from appellee Internal Improvement Fund Board under Chapter 253, Florida Statutes, F.S.A., should consider requesting the designation of a hearing examiner to take evidence so that the witnesses and evidence may be subjected to cross-examination and objections. Only in that fashion can applicants be afforded a hearing comporting with the requirements of due process as envisioned by Chapter 120, Florida Statutes F.S.A. I think we can take judicial notice that the State Cabinet sitting as the Internal Improvement Fund Board is neither equipped nor inclined to conduct a hearing which is quasi-judicial in nature where evidence may be refined so as to exclude irrelevant, immaterial and incompetent evidence. In the case at bar, however, the parties having elected to submit their evidence to the respondent board in the narrative form of written staff reports and recommendations, we cannot now consider petitioner's objections to the sufficiency of the evidence to support the order reviewed herein. And, for that reason I concur in the denial of certiorari.
NOTES
[1] Bay National Bank and Trust Company v. Dickinson, (Fla.App. 1969) 229 So.2d 302.
[2] DeGroot v. Sheffield, (Fla. 1957) 95 So.2d 912; Bloomfield v. Mayo, (Fla.App. 1960) 119 So.2d 417.
[3] Hayes v. Bowman, (Fla. 1957) 91 So.2d 795, 802.