353 So.2d 883 (1977)
George D. ALBRECHT and Nellie Richey, Petitioners,
v.
DEPARTMENT OF ENVIRONMENTAL REGULATION, Respondent.
No. EE-136.
District Court of Appeal of Florida, First District.
December 23, 1977.
As Corrected On Denial of Rehearing January 30, 1978.
*884 David A. Maney, of Gordon & Maney, Tampa, for petitioners.
Reynold L. Caleen, Jr., Tallahassee, for respondent.
SMITH, Judge.
Petitioners, the owners of a number of partially submerged lots in Pinellas County, applied to the Board of County Commissioners for a permit to fill those lots. The Board approved the application, subject to approval of the Trustees of the Internal Improvement Trust Fund pursuant to Section 253.124, Florida Statutes (1973). The application was later transferred to the Department of Environmental Regulation (DER) in the reorganization of State environmental agencies. Chapter 75-22, Section 10, Laws of Florida. Petitioners were afforded a hearing pursuant to Section 120.57(1), Florida Statutes (1975). The hearing officer's recommended order found that filling the lots would improve water quality by eliminating pollutants caused by storm water runoff but that filling would destroy a productive mangrove system which provides food for a variety of animal life. The hearing officer reviewed the statutory criteria for fill permits and recommended that the fill permit be denied. DER adopted the recommended order as its final order. Petitioners appealed to the Governor and Cabinet sitting as Trustees of the Internal Improvement Trust Fund, Section 253.76, Florida Statutes (1975), and that body affirmed DER's order. Petitioners now seek judicial review pursuant to Section 120.68, Florida Statutes (1975), asserting (1) DER improperly denied their application for a *885 permit because DER is not authorized by Section 253.124 to review a county commission's findings that a project will not adversely affect marine or other wildlife; and (2) Section 253.124 does not contain adequate standards to guide DER's discretion in determining whether to grant or deny permits.
Section 253.124(2) requires applicants for fill permits to seek approval from the appropriate board of county commissioners, who are to determine whether the proposed project would violate state or local law; harmfully obstruct or alter the natural flow of navigable waters; create erosion, stagnant areas, or shoaling of channels; or cause material injury or monetary damage to adjoining land. Petitioners agree that DER is authorized to review those findings.[1] In 1967 the legislature added a requirement that the county commission determine whether the proposed project would detrimentally affect wildlife, fish or other marine life or natural resources "and whether the destruction of oyster beds, clam beds or marine productivity ... will result therefrom to such an extent as to be contrary to the public interest." Chapter 67-393, Section 4, Laws of Florida. That clause does not contain a corresponding provision for review by DER. Therefore, petitioners argue, DER may not consider those factors. The concluding sentence of subsection (2) provides however, that "[t]he board [now DER] shall also consider any other factors affecting public interests."[2] Thus DER is authorized to consider the criteria listed in the 1967 revision of the statute in addition to the pre-1967 factors for which petitioners concede review. We decline to speculate whether the statute authorizes DER to consider factors other than those listed, but it does authorize DER review of all considerations for which the county commissioners have primary review.
Petitioners contend the phrase "to such an extent to be contrary to the public interest" is not an adequate standard for administrative determination of which fill permits should be granted and which denied. That phrase, argue petitioners, allows DER unbridled discretion in enforcing the statute and is therefore an unconstitutional delegation of the legislative power. Article II, Section 3, Florida Constitution.
The District Court of Appeal, Second District, upheld the constitutionality of Chapter 31182, Laws of Florida, a special act similar to Section 253.124, in Zabel v. Pinellas County Water and Nav. Contr. Auth., 154 So.2d 181 (Fla. 2d DCA 1963), quashed and remanded on other grounds 171 So.2d 376 (Fla. 1965). The District Court found the act a legitimate exercise of the State's police power and noted that the act
supplies eight criteria to be utilized by the Authority in considering an application such as that made by appellants. These criteria are designed to fulfill the purposes for which the Authority was created, [and] to provide for adequate regulation and control of waters in the county and their alteration....
The criteria in Chapter 31182 are very like those of Section 253.124. The Pinellas County Water and Navigation Control Authority was directed to consider "[t]he effect of the proposed plan or development upon the conservation of wild life, marine life, and other natural resources." Chapter 31182, Section 8(e) Laws of Florida (1955). The Authority was then required to consider "whether or not the proposed plan or development will materially affect any of the rights and interests of the public heretofore set out in this section." In Yonge v. *886 Askew, 293 So.2d 395, 400 (Fla. 1st DCA 1974), this court considered the statutory criteria of Section 253.124[3] and found the legislature had properly delegated to the Trustees of the Internal Improvement Trust Fund the responsibility "to exercise a sound discretion in determining whether the public interest will be served by the proposed works contemplated by the application." It must be noted that in Yonge the court did not explicitly consider whether the standards attending the delegation of authority were adequate; the issue was whether the legislature had intended to delegate discretion to the Trustees.
We conceive the criteria stated in Section 253.124, which direct the attention of DER to "fish, marine and wild life ... oyster beds, clam beds, or marine productivity," and feeding grounds for marine life, and which require the preparation of a biological survey, an ecological study and in some cases a hydrographic survey, are sufficient to satisfy the constitutional restriction on delegation of legislative power. Those criteria, accompanied by procedural safeguards afforded by Chapters 253 and 120, distinguish this case from Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974), in which the Supreme Court held unconstitutional a special act which prohibited, without further explanation, "undue or unreasonable dredging, filling or disturbance of submerged bottoms ... [and] unreasonable destruction of natural vegetation... ." Chapter 71-904, Laws of Florida, quoted in Barg, 302 So.2d at 739.
The Supreme Court has recognized that in some areas of regulation it is impractical for the legislature to enact specific standards for the exercise of administrative discretion. Demko's Gold Coast Trailer Park v. Palm Beach County, 218 So.2d 745, 747 (Fla. 1969) (upholding a statute providing a "Zoning Commission shall have authority to adopt building, electrical, plumbing and other codes and to change same from time to time when deemed proper for the public welfare."); North Broward Hosp. Dist. v. Mizell, 148 So.2d 1, 2 (Fla. 1962) (upholding an act authorizing a hospital board to grant or revoke physicians' licenses to practice at the hospital "so that the welfare and health of patients and the best interests of the hospital may at all times be best served.") See also Grova v. Baran, 134 So.2d 25 (Fla. 2d DCA 1961), app. dism., 145 So.2d 489 (Fla. 1962) (upholding an act allowing a board of county commissioners to grant garbage collection licenses "[f]or the purpose of promoting the health and general welfare of the communities... ."). By requiring the preparation of studies and surveys the legislature recognized that determination of each application for a fill permit involves complicated decisions which cannot intelligently be guided by specific or quantitative statutory standards. The legislature chose therefore to direct DER's attention to several areas of inquiry in the exercise of its sound and reviewable discretion to grant or deny permits.
As we noted in Cross Key Waterways v. Askew, 351 So.2d 1062 (Fla. 1st DCA 1977), the 1974 APA was not in effect when the Supreme Court decided Barg. Chapter 120 provides significant procedural safeguards which serve to restrict DER's discretion in considering permit applications. If less specific statutory standards are "a practical necessity in legislation regulating complex subjects ..., they are now susceptible to refinement by policy statements adopted as rules under the 1974 Administrative Procedure Act, Chapter 120, and as so refined are judicially ascertainable and enforceable." Cross Key Waterways, at 1069. To the extent DER does not refine the statutory standards through rulemaking it will be required to explain the policy behind each decision to grant or deny a permit. McDonald v. Dep't of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). Applicants must be afforded an evidentiary hearing upon request, at which they may present evidence and challenge the agency's nonrule policy. Section 120.57, Florida Statutes (1975); McDonald, supra; Hill *887 v. School Board of Leon County, 351 So.2d 732 (Fla. 1st DCA 1977). Judicial review is available. Section 120.68, Florida Statutes (1975). In addition, Chapter 253 provides that an applicant whose permit is denied may appeal to the Governor and Cabinet sitting as the Trustees of the Internal Improvement Trust Fund. Section 253.76, Florida Statutes (1975). We consider this array of procedural safeguards has lessened the need for strict statutory standards in the delegation of power to administrative agencies. The APA procedural provision for direct judicial review ensures that discretion will be exercised responsibly and fairly.
We note that DER, which has rulemaking authority under Section 253.03(7), Florida Statutes (1975), has as yet prescribed no rules which establish substantive criteria more specific than those stated in the statute. DER's Rule 17-4.29, Fla. Admin. Code does provide:
(7) The department shall upon denying any application furnish the applicant an official statement specifying with particularity the reasons for denial, including a precise evaluation as to the detrimental biological and ecological effects to be expected from the proposed project which would interfere with the conservation of fish, marine and wildlife or other natural resources to such an extent as to be contrary to the public interest... .
An order embodying the statement required by DER's rule should satisfy the McDonald requirement that nonrule policy be explained in an order. DER has been advised, however, as have other rulemaking agencies, that orders may not be employed to prescribe substantive standards "of general applicability," for which the APA requires rules. Sections 120.52(14), .54, Florida Statutes (Supp. 1976); State Dep't of Admin. v. Stevens, 344 So.2d 290, 296 (Fla. 1st DCA 1977); McDonald, 346 So.2d at 581.
The prayer of the petition for review is DENIED.
McCORD, C.J., concurs.
RAWLS, J., dissents.
RAWLS, Judge (dissenting).
I dissent.
Contrary to the majority opinion, petitioners' primary contention is that the Department of Environmental Regulation (DER) founded its denial of their fill application solely on the basis of ecological factors that are not within the DER's statutory scope of review, leaving no factual predicate to support its order.
As stated by the majority, petitioners' application was denied following the DER's review of certain factors enumerated in Section 253.124(2), Florida Statutes. Specifically, the hearing officer stated in his recommended order:
"... The term `contrary to the public interest' is broad enough to envision its application in cases involving elimination of even a small amount of natural resources that nevertheless play a role in the continuity of plant and animal life. As pointed out at the hearing by the testimony of the Respondent's experts, the elimination of only a few trees would not necessarily be of significance, but the destruction of over two acres in an area that has almost completely been developed is of importance. It thus must be concluded that Petitioners' project would be contrary to the public interest and, in consonance with the legislative intent, the application should be denied." (emphasis supplied)
Prior to July 14, 1967, the legislature, through Section 253.124(2), Florida Statutes, provided that any person wishing to fill land located in or bordering upon the navigable waters of the state make application to the board of county commissioners of the county wherein the proposed fill site was located. Illustrative is Section 253.124, Florida Statutes (1965), which provided, in part:
"... In the event such application be found by the board of county commissioners or other authorized body not to be violative of any statute, zoning law, ordinance, or other restriction which may be applicable thereto, or that no harmful *888 obstruction to or alteration of the natural flow of the navigable water as defined in § 253.12, within such area will arise from the proposed construction, or that no harmful or increased erosion, shoaling of channels or stagnant areas of water will be created thereby, or that no material injury or monetary damage to adjoining land will accrue therefrom, the same shall be granted to the applicant, subject to the formal approval of the trustees of the internal improvement trust fund."
Thus, pursuant to the pre-1967 versions of Section 253.124, Florida Statutes, an applicant was required to demonstrate to the board of county commissioners that the project would not: 1) violate state or local law; 2) harmfully obstruct or alter the natural flow of navigable waters; 3) increase erosion or the shoaling of channels or create stagnant areas of water; and 4) accrue material injury or monetary damage to adjoining land. If the commission found that an applicant met this four-part test, it was required to grant the application and issue a permit, subject to the approval of the Board of Trustees. There were no ecological factors enumerated, nor was the phrase "to such an extent as to be contrary to the public interest" present.
However, effective July 14, 1967, the legislature expanded the test for receiving a permit by the addition of the following language to Section 253.124(2), Florida Statutes.
"... the [application] shall be granted to the applicant, subject to the approval of the board of trustees of the internal improvement trust fund, who shall have the power to approve, reject or issue; provided, however, that prior to the issuance of such permit the board of county commissioners or other authorized body shall determine whether the granting of such permit and the construction to be done pursuant thereto would interfere with the conservation of fish, marine and wildlife or other natural resources to such an extent as to be contrary to the public interest ... The board shall also consider any other factors affecting the public interests."
By this amendment, the legislature added the requirement that various ecological factors be considered when determining whether an application should be granted. It also added the "contrary to the public interest" phrase that the denial of petitioners' application was based upon.
It is petitioners' position that the language of the 1967 amendment places the sole discretion on whether to grant an application based on ecological consideration in the hands of the local commissioners, and, further, that such decision is not reviewable by the Board of Trustees. Respondent, however, argues that, despite the language of the statute, it was the intent of the legislature to make the ecological considerations, as well as the other four criteria, reviewable by the Board of Trustees, since such considerations are of statewide impact.
The legislative intent is the polestar by which the courts must be guided, since it is the essence and vital force behind the law, and it is a factor which must be determined primarily from the language of the statute. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969 (1908). However, a statute is to be taken, construed and applied in the form enacted, because the legislature must be assumed to know the meaning of words and to have expressed its intent by the use of the words found in the statute. Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918). Further, it is a general rule of statutory construction that the courts may not, in the process of construction, insert words or phrases in a statute or supply an omission that to all appearances was not in the minds of the legislators when the law was enacted. Consequently, when there is doubt as to the legislative intent, or when speculation is necessary, the doubt should be resolved against the power of the court to supply missing words. Brooks v. Anastasia Mosquito Control Dist., 148 So.2d 64 (Fla. 1st DCA 1963); and Armstrong v. City of Edgewater, 157 So.2d 422 (Fla. 1963).
The language of Section 253.124(2), Florida Statutes, clearly provides that the board of *889 county commissioners shall consider four criteria and that their decision of these criteria are subject to the review of the Board of Trustees. The language of the 1967 amendment clearly requires that the board of county commissioners consider the additional ecological factors enumerated, but it does not, however, provide that decisions based upon these ecological factors are reviewable by the Board of Trustees.
Finding that the petitioners' application was denied solely on the basis of ecological factors "contrary to the public interest", I would hold that the DER and Board of Trustees exceeded their statutory scope of review as provided by Section 253.124(2), Florida Statutes, and that, therefore, there existed no factual predicate to support the denial of petitioners' application. Having made this determination, it is unnecessary and, indeed, inappropriate to consider the constitutionality of the standards imposed by the statute. There being no competent, substantial evidence to support the final order of the DER, as approved by the Board of Trustees, I would grant the petition for review and quash the final order.
NOTES
[1] By its terms § 253.124 commits this review to the Trustees of the Internal Improvement Trust Fund. As noted above, the Trustees' § 253.124 duties were transferred to DER by Ch. 75-22, §§ 10, 15, Laws of Florida.
[2] The "board" to which this sentence refers is the board of trustees of the Internal Improvement Trust Fund, not the board of county commissioners. As originally enacted the statute unambiguously referred to the "trustees." Ch. 67-393, § 4, Laws of Fla. The change was made when the trustees were renamed "board of trustees" in 1969. Ch. 69-106, §§ 27, 35, Laws of Fla.
[3] Yonge was concerned with criteria expressed in § 253.123 Fla. Stat. (1973). These criteria are exactly the same as those expressed in § 253.124.