407 So.2d 210 (1981)
George R. ALBRECHT and C.G. Schindler, Jr., Appellants,
v.
The STATE of Florida; the Honorable Reubin O'd. Askew, Governor; Honorable Jim Williams, Lieutenant Governor; Honorable Jesse J. McCrary, Jr., Secretary of State; Honorable Robert Shevin, Attorney General; Honorable Bill Gunter, State Treasurer and Insurance Commissioner; Honorable Gerald A. Lewis, Comptroller; Honorable Doyle Conner, Commissioner of Agriculture; Honorable Ralph D. Turlington, Commissioner of Education; Honorable Joseph W. Landers, Jr., Secretary, Department of Environmental Regulation, As the Trustees of the Internal Improvement Trust Fund of the State of Florida; the Internal Improvement Trust Fund of the State of Florida; and the Department of Environmental Regulation, Appellees.
No. 79-2234.
District Court of Appeal of Florida, Second District.
March 25, 1981.
As Modified on Denial of Rehearing December 11, 1981.
Lee S. Damsker of Gordon & Maney, P.A., Tampa, for appellants.
Alfred W. Clark, Tallahassee, for appellee Department of Environmental Regulation.
GRIMES, Acting Chief Judge.
This is an appeal from a final judgment on the pleadings which dismissed a complaint on grounds of res judicata.
The pleadings reflect the following facts. Appellants were owners of coastal property in Pinellas County, 300 feet of which had been lost by erosion between 1943 and 1974. In 1974 they applied to the Board of County Commissioners of Pinellas County, sitting as the Pinellas County Water and Navigation Control Authority, for permission to fill and bulkhead their land to its original size. The board approved the application subject to the approval of the Board of Trustees of the Internal Improvement Trust Fund.
Appellants then applied to the Department of Pollution Control for water quality *211 certification. However, that department denied their application. As a result, they filed a petition for review, and pursuant to a reorganization of the state environmental agencies, their application was transferred to the Department of Environmental Regulation. Following a hearing, the hearing officer issued a recommended order affirming the denial. The secretary of the Department of Environmental Regulation adopted the recommended order, and the Board of Trustees of the Internal Improvement Trust Fund affirmed it.
Appellants sought judicial review in the First District Court of Appeal pursuant to section 120.68, Florida Statutes (1975). The court denied their petition in an opinion issued on January 30, 1978. Albrecht v. Department of Environmental Regulation, 353 So.2d 883 (Fla. 1st DCA 1978). Almost seven months later, appellants filed suit in the circuit court of Pinellas County against the State of Florida and several state agencies alleging that by virtue of the administrative action recited above they had been unable to put their property to any use and that its fair market value had been greatly diminished. The complaint requested that the court declare the property to have been the subject of inverse condemnation and fix an amount of compensation to be paid appellants as a result of the taking.[1] The court entered judgment on the pleadings against appellants, and they have appealed from that judgment.
The court predicated its judgment on Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979). In Coulter, this court held that one may bring suit in circuit court to collaterally attack the constitutionality of a law pursuant to which an administrative agency takes action. On the other hand, we said:
[W]hen administrative agency action in a proceeding has become final as to a party, whether or not review by a district court of appeal is sought, that party is foreclosed from asserting in circuit court that the agency action is unconstitutional (or is improper for any other reason).
373 So.2d at 427. Perceiving appellants' complaint as one attacking the constitutionality of the agency action rather than one attacking the constitutionality of the law under which the agency acted, the lower court held that once the decision in Albrecht became final, the doctrine of res judicata barred appellants' action.
Appellants seek to avoid the rationale of Coulter by arguing that they are not now trying to void the action of the Department of Environmental Regulation. Rather, they contend that they are seeking compensation for the taking which came about as a result of that action. They suggest that this is not a matter which they could have raised in the administrative proceedings because the issue of taking is a judicial function, and a jury must determine compensation. Despite the ingenuity of their position, we cannot accept it as a rational exception to the principles of Coulter.
Under the teaching of Coulter, appellants could have argued the question of whether the order of the Department of Environmental Regulation constituted a taking of their property in the proceedings before the First District Court of Appeal. Cf. Farrugia v. Frederick, 344 So.2d 921 (Fla. 1st DCA 1977), in which the court considered just such a contention. The fact that they did not raise it is irrelevant to the application of res judicata. Hay v. Salisbury, 92 Fla. 446, 109 So. 617 (1926). To now allow them to assert it under the guise of arguing that the taking was legal but that they were entitled to be paid for it would be to permit them to go through the back door. They could have made the same contention in the administrative proceeding, and the First District Court of Appeal could have required that any taking be compensated. In fact, this is in essence what happened in Estuary Properties, Inc. v. Askew, 381 So.2d 1126 (Fla. 1st DCA 1979).
Upon review of the denial of an application for development approval, the court in Estuary recognized that the state could legitimately regulate wetlands development for public benefit even though it had the *212 effect of expropriating private property. However, the court held that under these circumstances, the state must compensate the landowners. It effectuated this result by ordering that the application be granted unless the county where the land was located commenced condemnation proceedings within thirty days.
Appellants are bound by the final determination of Albrecht. Therefore, principles of res judicata bar the relief they sought in circuit court.
AFFIRMED.
OTT and DANAHY, JJ., concur.
Rehearing denied:
OTT, Judge, dissenting.
I dissent. I would grant rehearing and reverse the dismissal of this action.
Appellants' complaint in the court below alleged that they had applied, under chapter 253, Florida Statutes, for a permit to fill their eroded waterfront property. They alleged that their application had been denied by action of the state agency and that, as a consequence, they had been denied all use of the subject property, entitling them to just compensation for the taking of that property by the state.
In express reliance on the opinion of this court in Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979), the trial court reluctantly[1] dismissed the suit on the ground that, under the Coulter view, the denial of the fill permit had established as res judicata that no taking of appellants' property would result. This court affirmed, in which I reluctantly concurred. I am now convinced that my original reaction was correct, the affirmance was erroneous, and so was the reliance of the trial court on Coulter.
The doctrine of res judicata prohibits the relitigation of the same cause of action between the same individuals, and forecloses the examination of any issue which was adjudicated, either expressly or by operation of law, in the earlier proceedings. Gordon v. Gordon, 59 So.2d 40 (Fla. 1952). It applies to the quasi-judicial decision of administrative agencies. City of Bartow v. Public Employees Relations Commission, 382 So.2d 311, 313[1, 2] (Fla. 2d DCA 1979).
In Coulter v. Davin, supra, a land owner who had been denied a permit by the state to fill his property filed a circuit court action seeking a declaration that the agency order was a nullity because, among other reasons, it constituted an unlawful taking of private property without just compensation. The trial court dismissed the action and we affirmed, reasoning that the land owner could have raised that issue in the administrative proceedings and, since he did not do so, the doctrine of res judicata barred him from asking another tribunal to examine that same issue.
I think the result in Coulter was correct, but I am now convinced that the doctrine of res judicata was not involved there. The prime prerequisite to application of that doctrine is that the issue being raised in the subsequent action must have been adjudicated, either expressly or by operation of law, in some previous action between the same parties. Gordon v. Gordon, supra. No such showing was made (or possible) either in Coulter or in the case now before us.
One of our sister courts has reached Coulter's result by a different route  or at least a renamed route  on facts quite similar to those at bench. In Key Haven Associated Enterprises, Inc. v. Board of Trustees, 400 So.2d 66 (Fla. 1st DCA 1981), a fill permit had been denied in chapter 380, Florida Statutes, administrative proceedings. The land owner did not appeal or seek judicial *213 review, but instead filed an inverse condemnation suit in circuit court, claiming that the denial of the permit had deprived him of all use of his property, thus entitling him to just compensation. Dismissal of the suit was affirmed on the ground that administrative remedies had not been exhausted. Although cited and approved extensively in the opinion, Coulter, with its reliance on res judicata, obviously could not apply where the causes of action were so dissimilar. Even the related doctrines of collateral estoppel and collateral attack were not helpful, the first because the question of a taking had not been actually adjudicated by the agency and the second because the court action did not attack or seek to overturn the agency order. As a consequence, the Key Haven court was forced to rely upon a different ground, and chose the doctrine of exhaustion of administrative remedies to support the lower court action.
In my opinion, both Coulter (except for result, of course) and Key Haven are unsupportable, and any difference between their ratio decidendi is purely semantic. My brethren, both in this court and in first district, evidently conclude that proof that the denial of a fill permit would effect a taking would compel granting of the permit. To the contrary. Proof that denial of a permit effected a taking would compel an award of compensation, and failure to do so would be reversible error under the fifth amendment of the Federal Constitution and article X, section 6, of the Florida Constitution. This case merely calls for a determination of where and when the demand for compensation can be entertained. Article IV, section 6, of the Florida Constitution supplies the answer to the first question: the circuit court. Behm v. DOT, 383 So.2d 216, 218 (Fla. 1980). Section 95.11(4) of the Florida Statutes provides the second answer: within four years after the taking.[2]
The essential predicate of both Coulter and Key Haven is that the relief sought in the circuit court was available in the administrative proceeding or in the district court of appeal upon petition for review of the agency action. Coulter proceeds on the tacit theory that since agency action is presumptively a valid exercise of police power, the denial of a permit necessarily carries with it an implied finding that no taking will result, because that would be unconstitutional and thus irreconcilable with the presumed validity of the agency action. Consequently, upon failure to attack that implied finding it becomes res judicata. Key Haven essentially tracks that reasoning, but for obvious reasons skirts the res judicata rationale.
The flaw in both Coulter and Key Haven is in their common predicate, that the relief being sought in circuit court was not only available in the administrative proceedings, but available only there.
Neither the state nor Federal Constitution prohibits the state from taking private property for lawful public purposes. They simply require that the owner be justly compensated. The fact that lawful state action may result in a taking is not and never has been a bar to the valid exercise of police power. If there was ever any doubt about that, it was recently laid to rest by our supreme court:
It may be, however, that a regulation complies with standards required for the police power but still results in a taking. This occurred in Pennsylvania Coal Co.[3] ... [where] [t]he Court held that enforcement of the statute amounted to a taking which required compensation.

Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1381 (Fla. 1981).
*214 It necessarily follows that when a land owner applies to the state for a permit concerning his property, whether denial of that permit will or will not result in total inability to use the property is completely extraneous to the issues involved in the agency proceeding. It is simply immaterial, and the agency not only has no jurisdiction to adjudicate that issue, there is no reason for it to do so, because even if a taking were concededly the inevitable result, that would not and should not dissuade the agency from whatever action is necessary to protect the public. That is the duty  the sole duty  of the agency, and its very reason for being. If a taking results, the land owner must pursue his remedies elsewhere. That is the procedure now expressly recognized by section 253.763, Florida Statutes (effective May 29, 1978), and it was, I submit, the proper procedure long before then.
If the question of a taking is irrelevant in the agency proceedings, it surely could be no less so in a reviewing court, or in an independent circuit court action attempting to overturn the agency order. And that is why Coulter was correct. The land owner was simply raising an issue that is not a cognizable deterrent to the exercise of police power. In short, his action was properly dismissed for failure to state a cause of action.
Our opinion in this case, from which I now recede, relied upon Farrugia v. Frederick, 344 So.2d 921 (Fla. 1st DCA 1977) and Estuary Properties, Inc. v. Askew, 381 So.2d 1126 (Fla. 1st DCA 1979) for the proposition that the question whether agency action resulted in a taking can be raised by petition for review before the district court of appeal and, if that is done, that court can grant relief (prior to May 29, 1978?) by conditioning the agency order upon the filing by the state of eminent domain proceedings. It is significant that neither of those cases cites any supreme court approval of such a theory, and it is also noteworthy that neither opinion reveals whether anyone even contested the propriety of raising such an issue in that proceeding.
In Farrugia the land owner argued that denial of a permit to dig a canal on his property effected a taking of the property without due process of law. The court pointed out that (1) the agency action complied with all applicable standards for exercise of police power and (2) all use of the subject property in fact had not been precluded by the agency order. The point for which we cited the case as authority was merely an implication, and even that was, at best, purely dictum.
In Estuary Properties, Inc. v. Askew, supra, the hearing officer in agency proceedings undertaken under chapter 380, Florida Statutes, recommended denial of a permit after refusing to address the issue of whether a taking would result. He ruled (correctly, I am convinced) that he had no jurisdiction to consider that "judicial issue," which was "beyond the purview of the administrative hearing." 381 So.2d at 1131. Notwithstanding that posture of the case, and the resultant chilling effect that ruling must have had on the presentation of evidence on the question whether a taking would result, the district court of appeal purported to "find" that a taking had resulted, and remanded the case to the agency with instructions to grant the permit unless the county instituted proceedings to condemn the property. Not surprisingly, the supreme court granted certiorari, approved the agency action, and remanded the case solely for specification by the agency of the matters required by section 380.08(3), Florida Statutes (1972). The action of the district court, upon which we relied in our opinion in this case, was not adopted by the supreme court. Graham v. Estuary Properties, Inc., supra.
It seems to me that much of the confusion surrounding this problem has resulted from unwarranted assumptions about the meaning and purpose of language such as that found in subsection (1) of section 380.08, Florida Statutes (1972).[4] There is, of *215 course, no indication whether chapter 380 applied to the permit proceedings in the present case, but the principles embodied in section 380.08(1) surely apply to all agency action, even when not expressly legislated. That is precisely my point. The cardinal rule, whether articulated by a court, a legislature or a constitution, is that private property cannot be confiscated for public purposes with fiscal impunity. Section 380.08(1) says no more than that. But, as already noted, that rule does not impair or limit police power. It merely assures the land owner that if his property is taken, or he is deprived of all use thereof, he will be compensated.
There is nothing in that rule, however, investing an administrative agency with jurisdiction to adjudicate those issues. Coulter, Key Haven, Estuary v. Askew, and our initial opinion here all assert (either tacitly or expressly) that, nevertheless, the district court of appeal has such jurisdiction by virtue of section 120.68(12)(c),[5] and failure to invoke that power leaves the hapless land owner without the use of his property, without compensation, and without remedy.
In the first place, as Judge Booth aptly points out in her dissent in Key Haven, it is one thing to say that a statute permits the raising of an issue in a particular manner at a particular time, and quite another thing to say that such statute mandates the raising of that issue exclusively there and then, on pain of having the matter forever foreclosed adversely.
In the second place, there indeed are issues in administrative permit proceedings that are constitutional in nature and that clearly affect the validity of the agency action. Due process and equal protection of laws quickly come to mind as examples of constitutional principles with which a reviewing court would be concerned. Should it be determined that an agency violated those fundamental rights, the remand directed by section 120.68(12) would be not only proper but unavoidable.
Not so, however, if the complaint is that agency action has effected a taking of private property for public purposes. Even if that assertion should be proven true when the issue is actually considered in a forum authorized to decide it, no violation of a constitutional right would occur unless and until a proper court refused to compensate the land owner. The most that could be asserted in a district court of appeal that was reviewing the agency action would be an allegation that the action, should it become final, would effect a taking. The district court (1) would have no record revealing the accuracy of that assertion and no evidence to support a finding either way and, even if it did, (2) would have no basis for overturning an otherwise proper exercise of police power. In short, there are two elements necessary to constitute a fifth amendment violation: (1) a taking and (2) failure to pay just compensation. When a district court of appeal is reviewing agency action, the mere possibility that the first element has occurred is insufficient to so much as justify, let alone mandate, relief.
I submit that the agency order in the instant case became final when the first district court of appeal affirmed it in January, 1978, and that appellants then had at least three years within which to file proceedings in the circuit court to establish that the agency action had deprived them of all use of their property, and to prove their resultant damages. On May 29, 1978, section 253.763 became effective,[6] and the time for filing such an action was reduced to 90 days. On August 21, 1978, appellants *216 filed the instant suit. It is immaterial whether the new statute did or did not pertain to existing causes, because under any view of the matter the action was timely. Carpenter v. Florida Central Credit Union, 369 So.2d 935, 937 (Fla. 1979); Foley v. Morris, 339 So.2d 215, 217 (Fla. 1976). The relief sought by the action was by then expressly authorized and the court erred in dismissing the case.
It is somewhat peculiar that neither Coulter nor Key Haven (except in the dissent) discussed section 253.763. The only logical explanation of that omission is that in both cases the court viewed the new statute as creating a new cause of action. I am unable to accept that hypothesis, nor can I logically conclude that, as Key Haven asserts, the relief specified by the new statute is available in the administrative proceedings if one will but exhaust his remedies there. If the new statute created a new cause of action, and Key Haven is correct in its assertion that section 120.68(12)(c) requires the resolution of the basic predicate of that cause of action exclusively in the agency proceeding, surely some revamping of chapter 120 would have been undertaken. That no such amendment has been made substantially discredits that hypothesis. Either the new statute did not create a new cause of action, or section 120.68(12)(c) does not make the district court of appeal the exclusive forum for raising the issue of a taking.
As for Coulter, the mere fact that section 253.763 was enacted destroys the rationale of that case. How could the denial, on May 28, 1978, of a fill permit be a res judicata determination that no taking resulted therefrom, when an identical order, issued the next day in identical proceedings under identical (unaltered) statutory authority, does not have that effect?
In closing, I should add that the views I express herein are not to be construed as suggesting that the state action denying the permit did in fact constitute a taking. That has not been tested below and is not before us. I am simply dealing with where and when such matters can and must be raised. I think appellants stated a viable cause of action, and I would grant rehearing and reverse the dismissal of their complaint.
NOTES
[1] The parties agree that section 253.763, Florida Statutes (1979), is inapplicable to this case.
[1] The court sensed the infirmity in Coulter, and was uneasy about its rationale, but correctly concluded that the judge had no jurisdiction to ignore it: "I think I'm bound by the second district. I think the case is binding and I'll grant your motion.... Specifically, Coulter v. Davin, 373 So.2d 423. Were it not for this case, I would rule otherwise, quite candidly. I can put on the record, without being critical of the district court, what I see is possible problems from the trial court from an administrative standpoint."
[2] If a liability created by the Constitution is a "liability created by statute," the time would be only three years. § 95.11(5), Fla. Stat.
[3] Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), in which Justice Holmes made a comment particularly pertinent to the question at hand:

We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.
The noteworthy feature of that comment is that there is no hint that the public condition cannot be thus improved, but merely a reminder that the fiddler must be paid.
[4] Section 380.08(1), Florida Statutes (1972).

Nothing in this chapter authorizes any governmental agency to adopt a rule or regulation or issue any order that is unduly restrictive or constitutes a taking of property without payment of full compensation, in violation of the constitutions of this state or of the United States.
[5] Section 120.68(12), Florida Statutes.

The court shall remand the case to the agency if it finds the agency's exercise of discretion to be: ... (c) otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.
[6] As noted in our initial opinion, appellants properly deny reliance on the new statute. It could not help them if, as the majority holds, they had no cause of action without it.