R. LANIER ANDERSON, III, Circuit Judge, dissenting:

I respectfully dissent. *Thornton v. Scarborough,* 348 F.2d 17 (5th Cir.1965), indicates that the term "vests" in the statute is not a word of art; rather, the term means simply "was acquired." I would hold here that the income distributed to the bankrupt-appellant within six months of his

bankruptcy "was acquired" at the time of the distribution. To hold that the bankrupt "acquired" his interest only at the time of his father's death, as the majority does, is to treat the term as a word of art in violation of the *Thornton* rationale. Under archaic principles of the common law of property, the bankrupt's interest may well have "vested" at the date of his father's death in 1957, or perhaps in 1932 when his grandfather died. I respectfully suggest, however, that the common understanding of the term "acquire" would indicate that the bankrupt "acquired" the property upon distribution.

Because I would also conclude that the income distribution was acquired by bequest or inheritance, I would affirm the judgment of the district court.

I dissent.

**James C. BURNEY, Plaintiff-Appellant,**

**v.**

**POLK COMMUNITY COLLEGE, et al., Defendants-Appellees.**

No. 83–3151.

United States Court of Appeals, Eleventh Circuit.

March 30, 1984.

---

Alice K. Nelson, Tampa, Fla., for plaintiff-appellant.

Jesse S. Hogg, Donald T. Ryce, Jr., Coral Gables, Fla., for defendants-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Plaintiff James C. Burney, a black male, appeals the district court's grant of summary judgment in defendants' favor on his

Title VII, 42 U.S.C.A. § 2000e *et seq.*, claim on the ground of collateral estoppel and the district court's dismissal of his 42 U.S.C.A. § 1983 claim alleging a deprivation of his First Amendment rights of free speech and free association as time barred by the Florida two year statute of limitations governing actions for the recovery of back wages, Fla.Stat.Ann. § 95.11(4)(c). We affirm.

The facts in this case are as follows. Plaintiff was employed as a tenured guidance counselor by the defendant Polk Community College (PCC). On April 11, 1978, the President of PCC petitioned PCC's Board of Trustees (the Board) to conduct proceedings on the President's recommendation that plaintiff be dismissed. Plaintiff requested that a full evidentiary hearing on the charges set forth in the President's petition be held. The Board appointed one of its members to serve as a Hearing Officer. A six day hearing was held at which plaintiff was represented by counsel and numerous witnesses were called on plaintiff's behalf. Plaintiff's defense at the hearing against the President's dismissal recommendation included allegations of racial discrimination based on claimed disparate treatment of similarly situated white faculty members. The Hearing Officer's recommended order rejected plaintiff's claim of disparate treatment and upheld the President's recommendation to dismiss the plaintiff. The Board adopted the Hearing Officer's order and plaintiff was dismissed on December 29, 1978.

Plaintiff appealed the Board's order of his dismissal to the Florida Second District Court of Appeals. The court affirmed the Board's order without published opinion.

*Burney v. Polk Community College,* 380 So.2d 586 (1979).

Plaintiff then filed a charge of race discrimination with the Equal Employment Opportunity Commission (EEOC), received a right to sue letter, and on June 21, 1981, filed a complaint in the United States District Court for the Middle District of Florida alleging causes of action under Title VII, 42 U.S.C.A. §§ 1981[1] and 1983 against PCC, the Board and others.[2]

## I. THE TITLE VII CLAIM: KREMER V. CHEMICAL CONSTRUCTION CORP.

The President's petition to the Board in this case listed thirteen separate reasons in support of his recommendation that plaintiff be dismissed. Plaintiff responded to these charges by asserting, *inter alia,* that the dismissal recommendation "[r]eflects the application of discriminatory criteria to him as compared with other College employees."[3] At the six day hearing, where plaintiff was represented by counsel, called seventeen witnesses to testify on his behalf, and submitted sixteen documentary exhibits in support of his defense, plaintiff:

[D]uring both direct and cross-examination of witnesses for Petitioner, attempted to show that the reasons set forth were not the real reasons behind the petition for relief as sought by the Petitioner. [Plaintiff] injected comparisons of [his] evaluations and Counselor E. Horton Briggs, and claimed that the ratings on the evaluations were similar. [Plaintiff] claimed that the continued employment of Briggs and intent to dismiss [him] constituted the application of disparate

**1.** Plaintiff does not appeal the district court's dismissal of his Section 1981 claim as time barred by Fla.Stat.Ann. § 95.11(4)(c).

**2.** In addition to PCC and the Board, the plaintiff's amended complaint names PCC's Dean of Students, Director of Counselling, Director of Admissions and Records, and a secretary to the Dean of Students as defendants in their individual capacities. We refer to all of the defendants in this case collectively as the PCC defendants.

**3.** Although plaintiff's actual response is not of record, the President's petition, Record at 61, states that plaintiff so responded to the charges in a letter of March 23, 1978. Plaintiff does not here contend that he did not raise this defense before the Hearing Officer, nor does he claim that the federal district court clearly erred in finding that "[t]he hearing officer did consider plaintiff's claims of racial discrimination and disparate treatment and found them lacking in merit." Record at 109.

measures in the evaluations of the services of the two individuals.[4]

The Hearing Officer concluded that the charges contained the required "good and sufficient reasons" for the dismissal of the plaintiff, noting that the President and the Board have "[w]ide discretion in deciding what constitutes 'good and sufficient reasons' as long as the reasons are of such nature that they do not infringe upon [plaintiff's] exercise of his First Amendment freedoms, nor involve nuances of racial discrimination."[5] The Hearing Officer held that "[n]o such allusions are made in the charges as set forth by Petitioner."[6] The Board adopted the Hearing Officer's recommended order as its proposed order, and the plaintiff filed exceptions and a brief opposing the recommended order. In its final order, the Board accepted the findings of the Hearing Officer and his recommendation that plaintiff be dismissed.[7] On appeal of the Board's order, the Florida Second District Court of Appeals affirmed.

The similarity between the facts of this case and *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), is apparent. In *Kremer,* the plaintiff filed a discrimination charge with the EEOC claiming that his discharge and failure to be rehired by the defendant

was due to his national origin and Jewish faith. Pursuant to the dictates of Title VII, 42 U.S.C.A. § 2000e–5(c), the EEOC referred plaintiff's charge to the New York State Division of Human Rights (NYHRD), the state agency charged with enforcing the New York law prohibiting employment discrimination. The NYHRD found there was no discrimination in plaintiff's discharge and failure to be rehired. The NYHRD Appeals Board upheld this determination. The plaintiff appealed the Board decision to the Appellate Division of the New York Supreme Court. The court affirmed the Board's order without written opinion. Plaintiff could have sought, but did not seek, review by the New York Court of Appeals. Plaintiff also pursued his charge with the EEOC, received a right to sue letter, and brought a Title VII action in federal district court, claiming discrimination on the basis of national origin and religion. The district court dismissed plaintiff's complaint, holding that the state court decision affirming the Board was res judicata[8] on plaintiff's Title VII claim.

The United States Supreme Court granted certiorari, and addressed the issue of whether the national policy embodied in Title VII of vesting enforcement of anti-

---

**4.** Hearing Officer's recommended order, Record at 79–80, *quoted* in the federal district court's memorandum opinion and order, Record at 108.

**5.** *Id.* at 82, *quoted* in the federal district court's memorandum opinion and order, Record at 108–109.

**6.** *Id.*

**7.** Plaintiff contends that the Board never adopted the Hearing Officer's finding that he was not dismissed for racial reasons in its final order. This claim is contradicted by the record: "The Board ... has decided to affirm the findings and conclusions of the Hearing Officer as modified herein." Record at 84. No modification of the Hearing Officer's finding that the charges were not based on racially discriminatory reasons follows, and the Board's final order adopts the Hearing Officer's conclusions as to the "good and sufficient reasons" standard. *Id.* at 85. The federal district court did not err in finding that the Board accepted the Hearing Officer's rejection of plaintiff's claims of racial discrimination.

**8.** We note at this juncture that the term "res judicata" is used generically to refer to both collateral estoppel, or issue preclusion, and res judicata, or claim preclusion. *See Migra v. Warren City School Board of Education,* —— U.S. ——, ——, 104 S.Ct. 892, 894–95, 79 L.Ed. 2d 56 n. 1 (1984); *Kremer,* 456 U.S. at 466–67 n. 6, 102 S.Ct. at 1889–90 n. 6. Res judicata in this second narrower sense of claim preclusion refers to the effect of a judgment in foreclosing the parties from relitigating issues that were or could have been raised in the prior action. Collateral estoppel, or issue preclusion, refers to the effect of a judgment in foreclosing litigation of a matter that has been litigated and decided. In *Kremer,* collateral estoppel was applied to prevent relitigation of the issue of employment discrimination previously decided by the state courts. Likewise, in the present case the district court held that the state court's affirmance of the Board's order collaterally estopped the plaintiff from relitigating the issue of employment discrimination.

**1378**

discrimination laws in the federal courts superseded the longstanding principle of comity expressed in 28 U.S.C.A. § 1738[9]:

Specifically, we decide whether a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim when the state court's decision would be res judicata in the state's own courts.

456 U.S. at 463, 102 S.Ct. at 1887–88. The Court held that Section 1738 requires that full faith and credit be given by the federal courts to a state court decision upholding a state administrative agency's rejection of an employment discrimination claim if two criteria are met: (1) the court of the state from which the judgment emerged would grant preclusive effect to the judgment, and (2) the state proceedings, including the administrative action and judicial review of this action, do not violate the procedural requirements of the Fourteenth Amendment's Due Process Clause. As these criteria were satisfied in *Kremer,* the Court held that plaintiff's Title VII action was properly dismissed by the district court.

■ The district court held that *Kremer* is controlling on plaintiff's Title VII claim and thus granted summary judgment in the PCC defendants' favor as a matter of law. In this appeal, plaintiff claims that *Kremer* does not apply to the present case because the state agency which rendered the administrative decision, the PCC Board, is not the state agency statutorily authorized to enforce Florida's anti-discrimination in employment laws.[10] Alternately, plaintiff contends that if *Kremer* does apply, the first criterion of the *Kremer* test[11] is not met in the present case, *i.e.,* that a Florida court would not grant preclusive effect to the Second District Court of Appeals' affirmance of the Board's order. We disagree.

**9.** 28 U.S.C.A. § 1738 provides in pertinent part: The ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ....

**10.** Fla.Stat.Ann. § 23.161 *et seq.* is Florida's employment discrimination Act. Section 23.-167 prohibits discrimination in employment on the basis of race, religion, sex, national origin, age, handicap, or marital status. Sections 23.-163–66 provide for a Commission of Human Relations to investigate and hold hearings on claims of employment discrimination and to serve as a deferral agency for the federal government. We agree with the plaintiff that the Florida Human Relations Commission is analogous to the New York State Division of Human Rights in *Kremer.*

**11.** Plaintiff also claims that the second criterion in *Kremer, i.e.,* that the administrative proceedings and judicial review comport with due process, is not met in this case. Plaintiff's sole argument in support of this claim is that the administrative proceedings did not meet minimal due process standards because the Hearing Officer was a member of the Board and thus, plaintiff claims, deprived him of his due process right to a fair and impartial decision maker. However, because plaintiff has pointed to no record evidence of actual bias in support of his claim that the Board was in an adversarial posture to him, and because our review of the record has revealed no such evidence, we hold that this claim is without merit and precluded by precedent binding upon this court, *Megill v. Board of Education of the State of Florida,* 541 F.2d 1073, 1079 (5th Cir.1976):

An impartial decisionmaker is a basic constituent of minimum due process. *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970); *Simard v. Board of Educ.,* 473 F.2d 988, 993 (2d Cir.1973). In *Duke v. North Texas State Univ.,* 469 F.2d 829 (5th Cir.1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160 (1973), this Court refused to adopt any *per se* rule disqualifying administrative hearing bodies. The record must support actual partiality of the body or its individual members. "In the absence of evidence to the contrary, we must assume therefore that the [administrative hearing body] acted independently and properly in these circumstances." 469 F.2d at 834. *Accord Jenkins v. Louisiana State Bd. of Educ.,* 506 F.2d 992, 1003 (5th Cir.1975).

Further we note that under the Florida Administrative Procedure Act, Fla.Stat.Ann. § 120.50 *et seq.,* plaintiff had the right to request that the Hearing Officer be disqualified for bias, prejudice, interest, or other causes for which a judge may be recused. Fla.Stat.Ann. § 120.71; *State ex rel. Allen v. Board of Public Instruction,* 214 So.2d 7 (Fla.1968). As in *Kremer,* "[t]he fact that [the plaintiff] failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." 456 U.S. at 485, 102 S.Ct. at 1899.

Plaintiff claims that the scope of the *Kremer* holding is limited to state court judgments affirming a state equal employment agency's orders. In support of this claim, plaintiff notes that the precise factual context of *Kremer* was a state court's affirmance of a state equal employment agency's order. We hold, however, that the *Kremer* analysis extends to the present state court judgment affirming the PCC Board's order, and that in this case it is the state court judgment, and not the agency affirmed, that is determinative of a federal court's full faith and credit obligation.

Clearly, the necessary focus of the *Kremer* analysis is on the state court judgment, and not the agency affirmed, for purposes of full faith and credit. Thus, in holding that neither the express statutory language nor legislative history of Title VII contains an implied partial repeal of Section 1738, the Court stated that:

> No provision of Title VII requires claimants to pursue in state court an unfavorable state administrative action, nor does the Act specify the weight a federal court should afford a final judgment by a state court if such a remedy is sought. While we have interpreted the "civil action" authorized to follow consideration by federal and state administrative *agencies* to be a "trial de novo," *Chandler v. Roudebush,* 425 U.S. 840, 844–45 [96 S.Ct. 1949, 1951–52, 48 L.Ed.2d 416] (1976); *Alexander v. Garner-Denver Co.,* [415 U.S. 36, 38, 94 S.Ct. 1011, 1015, 39 L.Ed.2d 147 (1974)]; *McDonnell Douglas Corp. v. Green,* [411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822–23, 36 L.Ed.2d 668 (1973)], neither the statute nor our decisions indicate that the final judgment of a state *court* is subject to redetermination at such a trial.

> . . . . .

> Nothing in the legislative history of the 1964 Act suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court.

456 U.S. 469–70, 73, 102 S.Ct. 1891–92, 1893 (emphasis in original).

This language is clearly evidence of the *Kremer* Court's focus on the state court judgment, and not the agency affirmed, for purposes of full faith and credit, and further disposes of plaintiff's claim that he is entitled to a trial de novo in federal court on his Title VII claim.

Additional internal evidence of the focus of the *Kremer* Court's analysis is found in the Court's holding that:

> [T]he comity and federalism interests embodied in § 1738 are not compromised by the application of res judicata and collateral estoppel in Title VII cases. Petitioner maintains that the decision of the Court of Appeals will deter claimants from seeking state court review of their claims ultimately leading to a deterioration in the quality of the state administrative process. On the contrary, stripping state court judgments of finality would be far more destructive to the quality of adjudication by lessening the incentive for full participation by the parties and for searching review by state officials. Depriving state judgments of finality not only would violate basic tenets of comity and federalism, *Board of Regents v. Tomanio,* 446 U.S. 478, 488, 491–92, [100 S.Ct. 1790, 1797, 1798–99, 64 L.Ed.2d 440] (1980), but also would reduce the incentive for States to work toward effective and meaningful antidiscrimination systems. *Id.* at 478 [100 S.Ct. at 1790] (footnote omitted).

The destructive effect of stripping state court judgments of finality is equally applicable to state court judgments affirming that a claim of employment discrimination is unproven made by a state administrative agency other than that expressly authorized to determine employment discrimination claims. Likewise, plaintiff's claim that affirming the federal district court's holding that *Kremer* applies to the PCC Board's order will deter claimants from seeking state court review of such orders is unfounded.

Finally, that the state court judgment is the determinative factor in the *Kremer* analysis is illustrated by the *Kremer* Court's holding that:

> [T]he congressional directive that the EEOC should give "substantial weight" to findings made in state proceedings, § 706b, 42 U.S.C. § 2000e–5(b), indicates only the minimum level of deference the EEOC must afford all state determinations; it does not bar affording the greater preclusive effect which may be required by § 1738 if judicial action is invovled[,]
>
> *Id.* at 470, [102 S.Ct. at 1891]

and accompanying footnote seven:

> Since it is well settled that decisions by the EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative decisions by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts.

In sum, it is the state court judgment, and not the agency decision, that triggers the full faith and credit requirement of Section 1738.

Our holding that *Kremer* applies to the present state court judgment affirming the PCC Board is supported not only by the clear import of the *Kremer* analysis but also by the pre-*Kremer* precedent of the former Fifth Circuit.[12] In *Frazier v. East Baton Rouge Parish School Board,* 363 F.2d 861 (5th Cir.1966) (per curiam), a public school teacher brought a Section 1983 action in federal court based on claims previously rejected by the School Board after a public hearing and affirmed by the Louisiana state court. The court held that plaintiff's Section 1983 action was barred by res judicata and that: "[i]f state administrative action is first challenged in the state court, and the state court acts judicially, the state court decision is *res judicata* and bars a decision by a federal court." *Id.* at 862.

In *Jennings v. Caddo Parish School Board,* 531 F.2d 1331 (5th Cir.1976) (per curiam), the School Board ordered plaintiff, a public school teacher, dismissed after a full hearing at which plaintiff was represented by counsel. Plaintiff appealed the Board's order to the Louisiana state court, which affirmed. Plaintiff's Section 1983 suit, alleging that her dismissal was racially motivated, was held to be barred by the res judicata effect of the state court judgment.

In *Cornwell v. Ferguson,* 545 F.2d 1022 (5th Cir.1977), plaintiff, an associate professor at the University of Florida, was not granted tenure or renewed employment by the University's Academic Freedom and Tenure Committee. At a hearing before the Committee, plaintiff alleged, *inter alia,* that this action constituted a denial of equal protection. The Committee found that no constitutional deprivations had occurred, and plaintiff was dismissed. Plaintiff then petitioned the Florida district court of appeal for review, and shortly thereafter filed an action in federal court, alleging similar causes of action under the Civil Rights Act. On defendants' motion the federal district court stayed the proceedings pending the outcome of the state appeal. The state court affirmed the Committee's order. The parties then returned to federal court and defendants' motion for summary judgment was granted on the ground of res judicata. On appeal, the former Fifth Circuit affirmed, holding the district court's abstention was proper and that the decision of the state court was res judicata in the federal proceeding:

> Due process does not require federal courts to get involved in every action alleging a federal constitutional or civil rights claim. Here the complaining party freely and voluntarily chose to first seek relief from the state court. This court has previously held that a state court judgment is conclusive as to all matters which were litigated or might have been litigated in the first action.
>
> *Id.* at 1024.

---

**12.** The Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, which is binding unless and until overruled or modified by this Court en banc. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

We find this precedential trio concerning the actions of administrative agencies similar to the PCC Board to be highly persuasive, if not controlling, in the present Title VII context because although each case involved federal claims under the Civil Rights Act the *Kremer* Court noted that:

> Our finding that Title VII does not create an exception to § 1738 is strongly suggested if not compelled by our recent decision in *Allen v. McCurry* [449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ] that preclusion rules apply in 42 U.S.C. § 1983 actions and may bar federal courts from freshly deciding constitutional claims previously litigated in state courts. Indeed, there is more in § 1983 to suggest an implied repeal of § 1738 than we have found in Title VII. 456 U.S. at 476, 102 S.Ct. at 1894.

*See also Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982) (relying on *Jennings* and *Kremer* in holding that a state court judgment affirming an administrative decision of a police personnel board is res judicata and barred plaintiff's Civil Rights Act claims). Since a federal court is required to give full faith and credit to a state court judgment affirming an administrative agency determination under both the Civil Rights Act and Title VII, we find no principled basis for distinguishing between the preclusive effect of a state court judgment affirming a school or university Board decision under the Civil Rights Act and under Title VII. In sum, we hold that the Florida court's affirmance of the PCC Board's order is entitled to full faith and credit in a federal court if the *Kremer* criteria are met.

We turn now to plaintiff's claim that the first criterion of the *Kremer* test is not met in this case and that a Florida court would not accord preclusive effect to the Second District Court of Appeals' judgment affirming the PCC Board's order. Plaintiff contends that the PCC Board did not have jurisdiction to determine his claim of employment discrimination and from this premise seeks to draw the conclusion that the state court's affirmance of the Board's order likewise was without jurisdiction and would not be given preclusive effect in a Florida state court. We disagree.

First, we note that the court's affirmance of the PCC Board's order can be read as necessarily involving a determination that the Board had jurisdiction over plaintiff's claim. *See Sauls v. DeLoach,* 182 So.2d 304, 305 (Fla. 1st D.C.A.1966) (on the district court of appeals' review of administrative agency actions under Fla.Stat.Ann. § 120.-31(1) (1977), the predecessor statute to current Fla.Stat.Ann. § 120.68, "[t]he question which we must decide is whether the administrative agency acted without or in excess of its jurisdiction"). *Cf. Kremer,* 456 U.S. at 480, 102 S.Ct. at 1896–97 ("[t]he Appellate Division's affirmance of the NYHRD's dismissal necessarily decided that petitioner's claim under New York law was meritless").

Second, we address plaintiff's claim that the state court's summary affirmance of the PCC Board's order "obviously" did not address plaintiff's claim of employment discrimination or the Board's jurisdiction over such a claim. Fla.Stat.Ann. § 120.68 governs judicial review of final agency action and provides that the district court of appeals "[s]hall remand the case to the agency if it finds the agency's exercise of discretion to be outside the range of discretion delegated to the agency by law," *id.* (12)(a), or "[i]f the court finds that the agency has erroneously interpreted a provision of law ... it shall: (a) set aside or modify the agency action, or (b) remand the case to the agency for further action under a correct interpretation of the provision of law," *id.* (9). Whether the Board's actions in determining plaintiff's employment discrimination claim were within its jurisdiction as a matter of law or delegated statutory discretion is an issue that would be properly presented to the district court of appeals on direct review. The record in this case does not reflect on what grounds plaintiff sought review of the PCC Board's order in the Florida court. Assuming that plaintiff did not raise such a challenge to the PCC Board's jurisdiction before the district court of appeals, this fact is irrelevant to the

application of the doctrine of res judicata to the district court of appeals' affirmance of the Board's order in a subsequent proceeding in a Florida court. In *Coulter v. Davin*, 373 So.2d 423, 427 (Fla.2d D.C.A.1979), the court held that:

> [W]hen administrative agency action in a proceeding has become final as to a party, whether or not review by a district court of appeal is sought, that party is foreclosed from asserting in circuit court that the agency action is unconstitutional (or is improper for any other reason). This is for the simple reason that the unconstitutionality of the action is an issue which could have been asserted by the party on direct review by the district court of appeal pursuant to Section 120.68.

*See also, Key Haven v. Board of Trustees of Internal Improvement Trust Fund*, 427 So.2d 153, 157–58 (Fla.1982); *Albrecht v. State*, 407 So.2d 210, 211 (Fla. 2d D.C.A. 1981); *Hays v. State Department of Business Regulation*, 418 So.2d 331, 332 (Fla. 3d D.C.A.1982). Since a Florida court would grant res judicata preclusive effect to all issues, including that of the PCC Board's jurisdiction, which could have been raised before the district court of appeals on direct review of the Board's order, a federal court is required to do the same.

Third and finally, we note that the issue of employment discrimination decided by the PCC Board's order is entitled under Florida law to collateral estoppel effect in subsequent proceedings before another administrative agency or state court, apart from direct review by the district court of appeals. *See Coulter v. Davin, supra; City of Bartow v. Public Employees Relations Commission*, 382 So.2d 311, 313 (Fla. 2d D.C.A.1979); *Marion County School Board v. Clark*, 378 So.2d 831, 835 (Fla. 1st D.C.A. 1979). (Ervin, J. concurring). Again, a federal court is required to do the same.

We therefore hold that *Kremer* requires that full faith and credit be given by a federal court to the judgment of the Florida Second District Court of Appeals affirming the Board's order disposing of plaintiff's claim of employment discrimination and that accordingly the federal district court did not err in granting summary judgment in the PCC defendants' favor as a matter of law.

## II. THE SECTION 1983 CLAIM: MCGHEE V. OGBURN

 The district court held that the applicable limitations period under Florida law[13] to plaintiff's Section 1983 claim, alleging a deprivation of his First Amendment rights of free speech and association, was that of Fla.Stat.Ann. § 95.11(4)(c), governing an "action to recover wages or overtime or damages or penalties concerning the payment of wages and overtime." Since plaintiff was discharged on December 29, 1979, and suit was not filed until June 21, 1981, the district court granted the PCC defendants' motion to dismiss plaintiff's Section 1983 claim as time barred. In determining the applicable statute of limitations for plaintiff's Section 1983 claim under Florida law the district court relied on *McWilliams v. Escambia County School Board*, 658 F.2d 326 (5th Cir. Unit B 1981),[14] in which the court held that Section 95.-11(4)(c) applies to a Section 1983 claim alleging race discrimination in employment

---

**13.** It is well settled that federal courts must look to the applicable state limitations period if Congress, as in the Civil Rights Act, has not provided a federal statutory limitation period, 42 U.S.C.A. § 1988; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).

> We recognize the proper approach is to first determine the essential nature of the claim under federal law and then focus on the period applicable to such a claim under state law.... But, as recognized in *Braden v. Texas A & M University System*, 636 F.2d

at 92 [5th Cir.1981] and *Shaw v. McCorkle*, 537 F.2d 1289, 1292 (5th Cir.1976), this distinction between the two steps becomes blurred since the federal characterization of the claim draws heavily on state law. *McGhee v. Ogburn*, 707 F.2d 1312, 1315 (11th Cir.1983).

**14.** Decisions rendered after September 30, 1981, by a Unit B court of the Former Fifth Circuit are binding precedent in this Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 n. 2 (11th Cir.1982).

and seeking both legal and equitable relief. After the district court's decision in this case, *McGhee v. Ogburn,* 707 F.2d 1312 (11th Cir.1983), was decided. In *McGhee,* this Court extended *McWilliams* to a Section 1983 claim alleging a deprivation of procedural due process in employment termination. The PCC defendants claim that the rationale of *McGhee* is controlling on the appropriate limitations period for plaintiff's Section 1983 claim in the present case, alleging a deprivation of his First Amendment rights. We agree only because we are bound by *McGhee.*

■ Plaintiff seeks to distinguish *McGhee* on the grounds that his First Amendment claims are not employment related and are distinct from any claim of race discrimination in employment. We agree that plaintiff's First Amendment rights exist outside of any employment relationship with the PCC defendants; we find, however, that the clear gravamen of plaintiff's Section 1983 claim is a claim that he was discharged by the PCC defendants in retaliation for exercising his First Amendment rights.[15] It is clear that plaintiff's First Amendment claim for retaliatory discharge is distinct from any claim of race discrimination in employment. If we were writing on a clean slate, we would hold that due to the distinct nature of plaintiff's First Amendment claim from any claim of racial discrimination in employment this case falls without the ambit of *McWilliams* and Fla.Stat.Ann. § 95.11(4)(c). This panel is, however, bound by *McGhee v. Ogburn,* which can only be reconsidered and overruled by the court en banc. As in *McGhee,* plaintiff:

[A]rgues that the appropriate limitations period is four years under either Fla.Stat. Ann. § 95.11(3)(f) (West 1982), which applies to an "action founded on a statutory liability," or *id.* § 95.11(3)(*o*), which applies to an "action for . . . any . . . intentional tort." Employment discrimination and due process claims share the pertinent characteristics of these statutes. Both are grounded in statutory liability, imposed by the Civil Rights Acts. If plaintiff's due process claim, based on the denial of sufficient notice and hearing, can be termed an action for an intentional constitutional tort, so can a claim for racial discrimination in demotion and eventual termination of employment. If, as McWilliams concluded, an "action to recover wages . . ." is the most closely analogous Florida action to a § 1983 action seeking injunctive relief as well as damages, then the same is true for a § 1983 due process employment case seeking the same relief.

707 F.2d at 1314.

Although we find considerable merit to plaintiff's claim that a First Amendment retaliatory discharge action arises separate and distinct from any claim of racial discrimination as in *McWilliams,* we find no principled basis for distinguishing between the present First Amendment retaliatory discharge claim and the *McGhee* procedural due process claim. If plaintiff's First Amendment claim of retaliatory discharge can be characterized as an intentional constitutional tort grounded in the statutory liability of the Civil Rights Act, then the same is true of a procedural due process employment termination claim. For this reason, unless and until this Court en banc overrules *McGhee*'s extension of *McWil-*

---

15. Plaintiff's amended complaint ¶ 14 states: Defendant PCC, its agents and employees, did infringe on Plaintiff's rights to free speech and free association by:
(a) Terminating Plaintiff because of his association with PCC maintenance workers;
(b) Terminating Plaintiff because of his association and support of Claretha Carnegie, another black PCC employee;
(c) Terminating him for his questioning of administrative policy decisions during the course of faculty and staff meetings;

(d) Terminating him for his active support of equal opportunity goals;
(e) Terminating him for writing a letter in support of such goals; and
(f) Using Plaintiff's jestful comments intended as an ethnic reference as a negative evaluation factor.
Record at 23.
Plaintiff seeks both injunctive relief and damages for his Section 1983 claim of retaliatory discharge. Record at 25.

*liams* to claims under the Civil Rights Act distinct from those involving allegations of racial discrimination, we affirm the district court's dismissal of plaintiff's Section 1983 claim alleging that he was discharged in retaliation for exercising his First Amendment rights as time barred under Fla.Stat. Ann. § 95.11(4)(c).

## III. CONCLUSION

We AFFIRM the district court's grant of summary judgment in the Polk Community College defendants' favor on plaintiff's Title VII claim, and AFFIRM the district court's dismissal of plaintiff's Section 1983 claim as time barred by Fla.Stat.Ann. § 94.11(4)(c).

R. LANIER ANDERSON, III, Circuit Judge, concurring specially:

I concur in the judgment and in all of the opinion, except that I express no opinion on the wisdom of the rule in *McGhee v. Ogburn,* 707 F.2d 1312 (11th Cir.1983).