**Maria E. TUMA, Plaintiff,**

v.

**DADE COUNTY PUBLIC SCHOOLS, Defendant.**

**No. 97–3082–CIVKING.**

United States District Court, S.D. Florida.

Jan. 6, 1998.

Maria A. Tuma, Miami, FL, pro se.

Madelyn Schere, Miami, FL, for Defendant.

## ORDER GRANTING SUMMARY FINAL JUDGMENT FOR DEFENDANT

KING, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Final Judgment, filed November 17, 1997. Plaintiff, who is proceeding pro se, has filed two

related submissions with the Court: (1) Plaintiff's Reply to Defendant's Answer to Employment Discrimination Complaint and Original Complaint, filed November 19, 1997, and (2) Motion for Final Judgment, Plea for Understanding and Help, and Motion for Acceptance of the Document I Mistakenly Entitled "Reply," filed December 8, 1997. In light of the liberal construction traditionally afforded to pro se pleadings, *see Faulk v. City of Orlando*, 731 F.2d 787, 790 (11th Cir.1984), the Court will accept and consider these submissions as both Plaintiff's cross Motion for Summary Judgment and her response to Defendant's Motion for Summary Judgment.

### I. Factual Background

Defendant Dade County Public Schools (the "School Board") administers the public school system in Dade County pursuant to Florida law. Plaintiff Maria E. Tuma ("Tuma") was an art teacher in the Dade County public school system for twenty-four years. From 1983 through her termination in January 1997, Tuma worked at Naranja Elementary School, Air Base Elementary School, Palm Lakes Elementary School, and Ojus Elementary School. It is uncontroverted that, throughout her career, Tuma has been a talented and caring teacher, helping her students garner numerous awards. Beginning in 1983, however, Tuma exhibited what school officials viewed as a pattern of insubordination that ultimately warranted dismissal. Because this case is at the summary judgment stage, the Court will consider and discuss only those incidents that are undisputed.

The first such incident took place in 1983 at Naranja Elementary School, where Tuma distributed pocket Bibles to some of her students. As a result, she was issued at least two notices instructing her that her actions violated School Board policy and requiring her to adhere to this policy. In 1985, while teaching at Air Base Elementary School, school officials held a conference with Tuma in response to complaints that Tuma had spoken to students about praying and having faith. Tuma was again specifically instructed that she was not to engage in religious activity in the classroom.

In 1989 Tuma was again reported to have distributed Bibles at school. In 1992, Tuma sent a religious letter to a faculty member. Tuma was admonished for her behavior at a conference in March of that year. Another conference was held in April to discuss religious posters that Tuma had put up in her classroom. The School Board's Office of Professional Standards offered Tuma a program of assistance, but she refused. Pursuant to Tuma's labor contract, the director of the Office of Professional Standards directed Tuma to select a physician for a medical evaluation. Tuma refused. The Assistant Superintendent also directed her to comply with procedures and undergo a medical evaluation, but Tuma's refusal persisted.

Although the School Board contemplated suspending Tuma in the fall of 1992, they instead granted her a leave for the remainder of the year and referred her to the Employee Assistance Program (EAP) for counseling. After several evaluations and medical clearance, Tuma returned to her teaching at Ojus Elementary School in late January 1993. Tuma encountered several problems at Ojus. First, EAP reported that Tuma was not continuing counseling as required. Second, Dr. Friedman, the principal of Ojus, directed Tuma not to communicate with her in writing unless it involved a school-related matter. Dr. Friedman issued this directive after receiving numerous gifts, invitations, and personal letters from Tuma. Tuma nonetheless continued to send Dr. Friedman personal communications. Finally, in late 1994, Dr. Friedman received a series of complaints regarding Tuma's professional demeanor and negative comments about other staff members. At conferences where Tuma's grading of students was questioned, Tuma called a parent a liar and alleged that faculty and staff at Ojus were conspiring against her.

In March 1995, Tuma was given a detailed prescription, or plan for improvement. She consistently refused to complete it. The School Board suspended Tuma in January 1996 and initiated dismissal proceedings for gross insubordination and willful neglect of duties. In October 1996, Administrative Law Judge ("ALJ") David M. Maloney concluded

that the School Board proved these charges clearly and convincingly and recommended that Tuma be dismissed. Accordingly, the School Board terminated Tuma's employment in January 1997. Tuma appealed the decision to Florida's Third District Court of Appeal ("Third DCA"), which affirmed the School Board's decision.

Tuma has now filed suit in this Court, alleging that the School Board discriminated against her because of her religion, in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e (1994), and infringed on her First Amendment rights to speech and free exercise of religion. The School Board has moved for summary judgment on three separate grounds: (1) that Tuma's present suit is precluded by the Third DCA's decision, (2) that Tuma has failed to establish a prima facie case under Title VII; and (3) that, even assuming Tuma has established a prima facie case, she has failed to demonstrate that the School Board's reasons for dismissing her were pretextual. Because the Court concludes that the Third DCA's decision precludes Tuma's federal claims, it will forego an analysis of the School Board's other grounds for summary judgment.

## II. Analysis

■ Federal courts are required to afford the same full faith and credit to state court judgments that would be provided by the courts of that state. *See* 28 U.S.C. § 1738 (1994).[1] In accordance with this mandate, federal courts have consistently applied the doctrines of res judicata and collateral estoppel to bar relitigation of issues previously decided in state courts.[2] *See Kremer v.*

*Chemical Constr. Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1890 n. 6, 72 L.Ed.2d 262 (1982). These principles are integral to our judiciary because they "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (holding that preclusion rules apply in section 1983 actions). Respecting the finality of state court judgments also serves to "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 96, 101 S.Ct. at 415.

■ The Supreme Court has specifically held that Title VII claims are not immune from the strictures of section 1738. *See Kremer*, 456 U.S. at 476, 102 S.Ct. at 1894–95 (finding that "Title VII did not create an exception to § 1738"). Therefore, a state court ruling on a claim of employment discrimination may bar a federal court from revisiting the issue under the guise of a Title VII claim. Similarly, rules of preclusion apply when a state administrative agency's rejection of a discrimination claim is affirmed by a state appellate court. Although the party claiming discrimination need not seek an appeal of the administrative decision, if she chooses to do so she is bound by the state court's judgment. *See Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376, 1378 (11th Cir.1988) ("This Circuit accords preclusive effect to judicial appeals following state administrative proceedings in accordance with that state's preclusion law.").

1. Section 1738 provides in pertinent part:
   The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
   *Id.* Thus, state law determines whether and to what extent state court judgments preclude future litigation.

2. The two doctrines serve the same purpose in different ways. Res judicata, or claim preclusion, means that a final judgment on the merits bars the parties or those in privity with them

from relitigating issues that were or could have been raised in the prior action. *See Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981). Collateral estoppel, or issue preclusion, requires that once a court decides an issue necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Section 1738 requires application of both doctrines. *See University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986).

■ It is of no moment that the state's ruling on discrimination may have been made in the context of a different legal proceeding. For instance, if an employee alleges discrimination during a hearing to review her termination, and a state tribunal upholds the administrative agency's rejection of that claim, a subsequent Title VII action may be barred. *See Burney v. Polk Community College,* 728 F.2d 1374 (11th Cir.1984). In *Burney,* a state administrative agency conducted hearings to determine whether to uphold the decision to dismiss the plaintiff, a tenured guidance counselor. At the hearing, the plaintiff claimed school officials were motivated by racial discrimination in deciding to terminate him. Holding that the plaintiff's subsequent Title VII suit was precluded, the Eleventh Circuit found it dispositive that the agency had considered and decided upon the plaintiff's allegations of discrimination. The fact that the agency was not empowered to rule specifically on employment discrimination claims was immaterial. As the Eleventh Circuit explained,

> The destructive effect of stripping state court judgments of finality is equally applicable to state court judgments affirming that a claim of employment discrimination is unproven made by a state administrative agency other than that expressly authorized to determine employment discrimination claims.

*Id.* at 1379; *see also Elliott,* 478 U.S. at 790–91, 106 S.Ct. at 3221–22; *Kremer,* 456 U.S. at 479–80, 102 S.Ct. at 1896–97. As long as the party had a "full and fair opportunity" to present her claims, and the state proceedings comported with Fourteenth Amendment due process, the party may not relitigate the issue even as part of a different cause of action. *Gorin v. Osborne,* 756 F.2d 834, 837 (11th Cir.1985)(quoting *Kremer,* 456 U.S. at 480–82, 102 S.Ct. at 1896–98); *see also Sharpley v. Davis,* 786 F.2d 1109 (11th Cir. 1986). This is the essence of collateral estoppel. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991) ("[A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.").

Collateral estoppel is routinely applied by Florida courts. It is well established in Florida that parties are estopped from litigating issues that have already been decided in a prior proceeding: "The essential elements of the doctrine are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Department of Health and Rehabilitative Servs. v. B.J.M.,* 656 So.2d 906, 910 (Fla.1995); *see also St. Laurent v. Ambrose,* 991 F.2d 672, 676 (11th Cir.1993) (discussing Florida preclusion law); *Burney,* 728 F.2d at 1381–82 (same).

Here, Tuma's claim of religious discrimination has been fully litigated and ruled upon in proceedings involving the same parties and the identical issue. The record of Tuma's administrative hearing reveals that on several occasions she argued that her termination was motivated by religious discrimination. The ALJ rejected this contention by concluding that the School Board's allegations of gross insubordination were proven clearly and convincingly. The Third DCA affirmed this conclusion. The exact argument that Tuma presented to the ALJ, that she was discriminated against because of her religion, forms the crux of both her Title VII and her First Amendment claims in this case. Because the issue has already been decided adversely to Tuma, she is collaterally estopped from relitigating it in this Court. Thus, the School Board is entitled to judgment as a matter of law.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Final Judgment be, and the same is hereby, GRANTED. Final judgment is hereby entered for Defendant and against Plaintiff. All pending motions are DENIED as MOOT.

DONE and ORDERED at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 5th day of January, 1998.